PETER SHARP v. GEO. FIELDS.

1. LIEN OF SOLICITOR. Where, pending the suit, the complainant buys· from the defendant the land in controversy, taking his deed with full covenants, and conveys to the defendant other lands in exchange, the solicitors of the *defendant* are not entitled to a lien on the land so conveyed by the *defendant* to the *complainant* for their fees.

2. SAME. The defendant not having assented to the declaration of lien, may prosecute a writ of error to reverse so much of the decree as declares the lien—at the cost of the solicitor.

3. SAME. The complainant cannot maintain a bill to subject the land conveyed by him to the defendant in the exchange, to the amount of the solicitor's fees, as so much of the purchase money of said tract re-. maining unpaid.

FROM UNION.

Appeal from the Chancery Court at Maynardsville. W. B. STALEY, Ch.

W. P. WASHBURN, H. R. GIBSON and A. S. PROS-SER for complainant.

L. TILLMAN, JR., for defendant.

McFARLAND, J., delivered the opinion of the court.

Several causes were pending in the chancery court of Union county, in which Sharp was complainant and Fields was the principal defendant, involving the title to certain lands, when, on the 26th of September, 1877, a written compromise was entered into between

Sharp *v.* Fields.

the parties by which Sharp was to give Fields a certain tract of land, described as a two hundred acre tract, on that day· conveyed by Sharp to Fields, and Fields agreed to render to Sharp possession of two other tracts, known as the Fields and Tucker tracts, and Sharp was to have the rents that had accumulated pending the litigation, but was to pay the costs, and this was to constitute a final settlement of the litigation. On the same day deeds were executed by Fields and Sharp to each other respectively for said lands, with full covenants of seizin and warranty. On the 17th of October, 1877, the compromise was presented and made the decree of the court in said causes, and thereupon, upon motion of Henderson & Jourolmon and J. M. Meek, the solicitors of Fields in said causes, a lien was declared in their favor upon the lands which had been conveyed in pursuance of the compromise by *Fields* to *Sharp* for their reasonable fees. The language of the decree is, "that, it appearing to the court that the complainant" (Sharp) "has purchased the premises which was the subject-matter of these causes from the said respondent," (Fields) "by deed dated 26th September, 1877, for the consideration of one thousand dollars," (the consideration specified in the deed) "and it further appearing that they" (the solicitors) "are entitled to a lien on the same," etc., it is ordered, on their motion, that the lien be declared on said land to the extent of one thousand dollars for the reasonable value of their services, "the amount of which fees may be hereafter determined and enforced by appropriate proceedings."

Thereupon, on the same day, Sharp filed his bill against Fields, setting forth the foregoing facts, and alleging that the fees would be large—not less than $300, and perhaps as much as $500 or more—which he would be forced to pay, and insisting that he had the right to treat the amount that he might be thus forced to pay as so· much of the purchase price of the land which *he* had conveyed to *Fields* remaining unpaid, and for which he was entitled to a vendor's lien on said latter tract; and further, that the declaration of said lien was in effect a breach of the covenants in Fields' deed to him.

The cause was heard upon bill and answer, and the record of the original causes as evidence, when the chancellor decreed that the complainant was entitled to the relief prayed for, and to have the land, conveyed by the complainant Sharp to Fields, subjected to the payment of the fees which had been declared a lien on the . land conveyed by Fields to Sharp; but it not appearing what the fees amounted to, the master was ordered to hear proof and report what amount Sharp in his lifetime, or his representatives since his death have paid in satisfaction of said lien, and how much they are still liable for, and whether such sums were reasonable fees.  From this decree Fields was permitted to appeal, and subsequently he sued out a writ of error to reverse that part of the decree on the compromise in the original cause declaring the lien in favor of his solicitors.  The two causes have been heard together.

It is not insisted upon the part of the solicitors

in whose favor the lien was declared, that it was properly declared, in view of our recent holdings. *Garner* v. *Garner*, 1 Lea, 29.   But it is insisted that Fields cannot be allowed to prosecute the writ of error to reverse that part of the decree, because he is not injured by it.   The lien is not declared on his (Fields') land, or on the land acquired by him under the compromise, but upon Sharp's land, that is, the land Fields conveyed to Sharp, and if this decree compels *Sharp* to pay the fees, Fields cannot be injured by it.   But if the lien existed as declared by the court, it was for a debt due from Fields to his solicitors; and if it existed at all, it must be because it related back prior to Fields' conveyance to Sharp, and was superior thereto.   There would be no meaning in saying that it was a lien that attached subsequent to this conveyance; for then it would be no lien at all.   The very meaning of the declaration was that the lien was superior to the rights acquired by Sharp under his conveyance; and if this be true, then it would result that Fields' debt to his solicitors was declared to constitute a lien on the land conveyed by Fields to Sharp, which Sharp would be compelled to remove, and this would entitle Sharp to relief against Fields; if not to the relief prayed for in his bill, at all events to relief upon the covenants of Fields' deed.

Next it is insisted that the writ of error cannot be maintained because the declaration of lien was *coram non judice* and void.   We think, however, that Fields had the right to bring the question up for review by

writ of error, whether it be considered as void or only erroneous.

Next, it is argued that the decree is not final. The decree, as we have seen, after declaring the lien, concludes: "The amount of which fees may be hereafter determined and enforced by appropriate proceedings." It is suggested that this means further proceedings to be had in that cause; but as no further process or proceeding in the cause was ordered, we take it to mean that the solicitors might enforce their lien by some original proceeding, and, in this view, the decree was final.

It is argued that the solicitors ought not to be subjected to the costs resulting from a reversal, as they were not seeking to enforce the lien. The record, however, shows that it was declared upon their motion, and it not appearing to have been done by the assent of their client, and being erroneous, it must be reversed, with the usual result.

This brings us to the bill filed by Sharp. In any event, we think it a clear mistake to suppose that the amount of the supposed lien or incumbrance constituted a part of the purchase price of the land conveyed by Sharp to Fields for which a vendor's lien could be enforced. It could at most have been but an incumbrance on the land, which Sharp, being compelled to remove, could have recourse on Fields on the covenants of his deed, or Sharp might probably maintain a bill to compel Fields to remove the incumbrance. But as we hold there was no valid lien or incumbrance, Sharp was not subjected to any

loss, and his bill was not necessary. Whether, if Sharp paid to Fields' solicitors fees justly due them from the latter, he would be entitled, upon the facts of this case, to a decree personally against Fields, we need not consider. As the bill does not allege that such payment had been made, we suppose, from the chancellor's decree, that it was suggested to him that the fees, or some part of them, had been paid subsequent to the filing of this bill; but this is a question upon which there is no issue in the pleading.

The decree must be reversed and the bill dismissed with costs.